| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| LUNA RESIDENTIAL II<br>**Apelada**<br><br>V.<br><br>ANA LUISA TOLEDO DAVILA T/C/C ANA L. TOLEDO DAVILA Y OTROS<br>**Apelante** | TA2026AP00204 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil. Núm. SJ2019CV04102<br><br>Sobre:<br>EJECUCIÓN DE HIPOTECA |

Panel integrado por su presidente, el Juez Hernández Sánchez, el Juez Rivera Torres y el Juez Marrero Guerrero.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 27 de marzo de 2026.

El 26 de febrero de 2026, la Sra. Ana L. Toledo Dávila (señora Toledo o la apelante) compareció ante nos, por derecho propio, mediante *Apelación* y solicitó la revisión de una *Sentencia* que se dictó el 8 de octubre de 2025 y se notificó el 14 de octubre de 2025 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* y las dos solicitudes de desestimación que presentó Luna Residential II, LLC. (Luna o la apelada).

Por los fundamentos que expondremos a continuación, ***confirmamos*** el dictamen apelado.

I.

El 26 de abril de 2019, el Banco Santander Puerto Rico (Banco Santander) presentó una *Demanda* sobre cobro de dinero y ejecución de hipoteca contra la señora Toledo y otros.[1] Alegó que,

---

[1] *Véase*, Entrada Núm. 1, SUMAC TPI. Cabe señalar que, en la *Demanda* se incluyó como parte demandada a la Sucesión de la Sra. Idalia Dávila Colón, debido a su previo fallecimiento. Posteriormente, Banco Santander advino en conocimiento de que el Sr. Luis Ángel Toledo Olivieri también había fallecido, por lo que procedió a enmendar la demanda con el único fin de incluir como codemandados a los miembros de su sucesión, quienes resultaron ser los mismos integrantes de la sucesión de la señora Dávila.

era tenedora de buena fe de un pagaré hipotecario, adquirido mediante transferencia onerosa, por la suma principal de $260,000.00, con intereses al 7% anual, suscrito por la señora Toledo, el Sr. Luis Ángel Toledo Olivieri y la Sra. Idalia Dávila Colón (éstos últimos fallecidos) mediante afidávit otorgado ante notario el 21 de octubre de 1998. Sostuvo que, para garantizar el pago de dicha obligación, la señora Toledo constituyó una hipoteca voluntaria sobre un inmueble ubicado en San Juan, descrito como una casa de dos plantas situada en la Calle del Sol, la cual constaba inscrita en el Registro de la Propiedad.

No obstante, indicó que los suscribientes del pagaré incumplieron con el pago de las mensualidades desde el 1 de agosto de 2008, por lo que se declaró vencida la totalidad de la deuda. Expresó que, al 1 de abril de 2012, la deuda ascendía a un balance de $226,856.08 de principal, más intereses acumulados al tipo pactado, $10,811.25 en recargos por atrasos, y $26,000.00 estipulados para costas, gastos y honorarios de abogado, además de otros cargos que continuaban acumulándose hasta el pago total.

A tales efectos, le solicitó al TPI que declarara con lugar la *Demanda,* determinara que la parte demandada adeudaba solidariamente las sumas reclamadas, reconociere la existencia de un gravamen hipotecario de primer rango sobre el inmueble descrito y ordenara la venta judicial de la propiedad hipotecada para satisfacer la deuda. Además, indicó que, de existir un remanente, se solicitaba que fuese depositado en la Secretaría del Tribunal para su posterior disposición, y que se autorizara la ejecución de otros bienes de la parte demandada para cubrir cualquier deficiencia que permaneciera luego de la venta del inmueble.

En respuesta, el 25 de septiembre de 2019, la señora Toledo presentó una *Contestación a la Demanda y Reconvención.*[2] En esencia, negó sustancialmente las alegaciones de la *Demanda* y sostuvo que el Banco Santander no demostró ser tenedor de buena fe del pagaré hipotecario ni tener legitimación para reclamar la deuda. Asimismo, objetó la autenticidad y el contenido del pagaré presentado y negó adeudar suma alguna al Banco.

Por otro lado, alegó que las reclamaciones incluidas en la *Demanda* ya habían sido previamente adjudicadas en el caso civil núm. KCD2009-0268, por lo que constituían cosa juzgada. En ese sentido, sostuvo que en dicho caso el tribunal determinó que Banco Santander no probó ser el tenedor de buena fe del pagaré, por lo que la presente acción no procedía.

En cuanto a la reconvención, adujo que previamente había presentado una reclamación contra Doral Bank en el caso antes mencionado por incumplimiento contractual. Sostuvo que, como contratista independiente, prestó servicios legales enviando cartas a clientes morosos del banco y que Doral Bank retenía o debía cobrar a los clientes los honorarios correspondientes, pero incumplió con remitirle dichos pagos. Según alegó, como resultado de esa conducta se acumuló una deuda no menor de $270,000.00 a su favor. Añadió que, tras el cierre de Doral Bank, la institución fue sustituida en el pleito por Banco Santander, por lo que esta última debía responder por las obligaciones y reclamaciones que tenía contra Doral Bank.

Como segunda causa de acción, indicó que el Banco Santander violó disposiciones del *Dodd-Frank Wall Street Reform and Consumer Protection Act* y del *Real Estate Settlement Procedures Act*, al no contestar oportunamente solicitudes formales de información ("Qualified Written Requests") relacionadas con la

---

[2] *Véase*, Entrada Núm. 13, SUMAC TPI.

titularidad del pagaré. A su juicio, dicha omisión la colocó en estado de indefensión y le causó daños y angustias mentales.

Por todo lo anterior, solicitó que se desestimara con perjuicio la *Demanda*, que se declarara que el Banco Santander actuó con temeridad, y que se declarara con lugar la reconvención, ordenando el pago de no menos de $370,000.00, correspondientes a $270,000.00 por incumplimiento contractual y $100,000.00 por daños y perjuicios, más intereses, costas y honorarios de abogado.

Luego de varios trámites procesales, el 22 de julio de 2021, el TPI emitió una *Orden* mediante la cual, a solicitud del Banco Santander y Luna, autorizó la sustitución del Banco por Luna como parte demandante, tras haberse vendido a esta última la deuda objeto del presente pleito.[3]

El 20 de agosto de 2021, la señora Toledo presentó *Moción Sobre Ejercicio de Derecho a Retracto Litigioso*.[4] En síntesis, sostuvo que Luna estaba impedida de reclamar derechos sobre la propiedad objeto del litigio, ya que en el caso *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila*, caso civil núm. KCD2009-0268, el TPI determinó que el Banco Santander no era tenedor de buena fe del mismo pagaré involucrado en el presente pleito. A partir de ello, argumentó que cualquier cesión posterior de dicho pagaré resultaba nula. Asimismo, solicitó que se ordenara a Luna producir evidencia de la cesión del crédito, con el propósito de poder ejercer su derecho al retracto de crédito litigioso.

Posteriormente, el 23 de agosto de 2021, Luna presentó una *Oposición a "Moción Sobre Ejercicio de Derecho a Retracto […]"*. En esencia, argumentó que el Tribunal Supremo, en *DLJ Mortgage Capital Inc. v. Santiago Martínez y otros*, 202 DPR 950 (2019), resolvió que en las transacciones que conllevaban la cesión de

---

[3] *Véase*, Entrada Núm. 46, SUMAC TPI.
[4] *Véase*, Entrada Núm. 48, SUMAC TPI.

instrumentos negociables bajo la Ley de Transacciones Comerciales, *supra*, no aplicaba la figura civil del retracto de crédito litigioso. Con base en ello, solicitó que la petición de la apelante fuese denegada de plano.

Cabe señalar que, el 3 de noviembre de 2021, la señora Toledo presentó una *Moción en Cumplimiento de Orden* mediante la cual hizo constar que libre, voluntaria y expresamente renunciaba a su derecho de mediación compulsoria al amparo de la Ley Núm. 184-2012, según enmendada, conocida como *Ley para Mediación Compulsoria y Preservación de tu Hogar en los Procesos de Ejecuciones de Hipotecas de una Vivienda Principal*, 32 LPRA sec. 2881 *et seq.*[5] Así pues, ese mismo día, a saber, el 3 de noviembre de 2021, el TPI emitió una *Orden* que notificó el 4 de noviembre de 2021 en la cual consignó la renuncia de la apelante al procedimiento de mediación compulsoria.[6]

Posteriormente, el 17 de noviembre de 2021, Luna presentó una *Réplica a la Reconvención* negando las alegaciones de la reconvención en su contra.[7] Además, ese mismo día, a saber, el 17 de noviembre de 2021, Luna presentó una *Moción Informativa y en Solicitud de Remedio*.[8] Específicamente, indicó que la apelante dejó transcurrir el término de nueve (9) días establecido en el Art. 1425 del Código Civil de 1930, 31 LPRA sec. 3950, para ejercer el derecho a retracto de crédito litigioso por lo cual se extinguió por caducidad.

Luego de otros escritos en torno a qué disposiciones serían aplicables en este caso, el 3 de diciembre de 2021, el TPI dictó una *Orden* que se notificó el 6 de diciembre de 2021, en la cual determinó que serían las del Código Civil de 1930, según enmendado, por ser el que estaba vigente al momento de presentarse la *Demanda*.[9]

---

[5] *Véase*, Entrada Núm. 61, SUMAC TPI.
[6] *Véase*, Entrada Núm. 64, SUMAC TPI.
[7] *Véase*, Entrada Núm. 66, SUMAC TPI.
[8] *Véase*, Entrada Núm. 65, SUMAC TPI.
[9] *Véase*, Entrada Núm. 69, SUMAC TPI.

Además, les ordenó a las partes evidenciar cuándo ocurrió la reclamación de Luna para poder determinar en qué momento comenzó a transcurrir el término de nueve (9) días, en caso de aplicarse la figura del retracto de crédito litigioso.

Ante ello, el 6 de diciembre de 2021, Luna presentó una *Moción en Cumplimiento de Orden,* con la cual acompañó la notificación de transferencia de préstamo que presuntamente le envió a la señora Toledo.[10] El 21 de diciembre de 2021, la apelante presentó una moción en la que indicó que la notificación de traspaso de pagaré que presuntamente le envió Luna era ineficaz ya que el documento no mencionaba que Luna hubiese adquirido el crédito, si no que meramente se mencionaba que los pagos se deberán referir a Planet Home Lending.[11] Finalmente, reiteró que se le ordenara a Luna a proveer la información sobre la transacción para poder ejercer el derecho al retracto de crédito litigioso.

Luego de varios trámites procesales, el 19 de enero de 2022, Luna presentó una *Solicitud de Desestimación de Reconvención.*[12] Allí sostuvo que procedía la desestimación de la reconvención presentada por la señora Toledo al amparo de la Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2 por entender que dicha reclamación no exponía hechos que justificaran la concesión de remedio alguno en su contra. Señaló que, al examinar las alegaciones de la reconvención, surgía que los hechos imputados por la apelante estaban dirigidos realmente contra Banco Santander, y no contra Luna. En ese sentido, planteó que, aun tomando como ciertos todos los hechos alegados en la reconvención, estos no establecen una causa de acción válida contra Luna.

---

[10] *Véase,* Entrada Núm. 70, SUMAC TPI.
[11] *Véase,* Entrada Núm. 72, SUMAC TPI.
[12] *Véase,* Entrada Núm. 78, SUMAC TPI.

De igual forma, argumentó que, aunque las alegaciones debían interpretarse liberalmente al evaluar una solicitud de desestimación, los tribunales podían desestimar una reclamación cuando, tras examinarla, quedaba claro que el reclamante no prevalecerá bajo ningún estado de derecho. En apoyo de su postura, citó jurisprudencia del Tribunal Supremo que reconoce dicha facultad judicial. Finalmente, expuso, de manera persuasiva, una determinación del Tribunal de Apelaciones en un caso similar, donde se resolvió que un deudor no podía presentar cualquier causa de acción contra un comprador de deudas únicamente por el hecho de haberse convertido en el nuevo acreedor. Conforme a ese razonamiento, indicó que, como cesionaria del crédito, no respondía por los supuestos actos u omisiones de Banco Santander, quien fue el acreedor anterior.

En respuesta, el 25 de enero de 2022, la señora Toledo presentó su *Oposición a "Moción de Desestimación".*[13] Argumentó que, la apelada intentaba aplicar de forma acomodaticia las normas jurídicas que le favorecían, ignorando las disposiciones aplicables de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, conocida como *Ley de Transacciones Comerciales*, 19 LPRA sec. 401 nota *et seq.* (Ley de Transacciones Comerciales). Expuso que era incorrecta la afirmación de Luna de que la reconvención fue dirigida exclusivamente contra Banco Santander, ya que originalmente la reclamación fue presentada contra Doral Bank, entidad que desde el año 2008 se negó a continuar pagando ciertos honorarios que, a su entender, le correspondían. Expresó que cuando Banco Santander compareció como sucesor de Doral Bank en un pleito previo, lo hizo con conocimiento de dicha reclamación, por lo que,

---

[13] *Véase*, Entrada Núm. 79, SUMAC TPI.

según plantea, heredó las controversias existentes relacionadas con el pagaré.

Además, alegó que, conforme a la Ley de Transacciones Comerciales, *supra*, Luna no cualificaba como tenedora de buena fe, pues adquirió el instrumento con conocimiento de que este se encontraba en mora y sujeto a reclamaciones. Indicó que, bajo ese planteamiento, tampoco podría beneficiarse de la protección que la ley otorga a los compradores en el curso ordinario de los negocios, ya que su práctica consistía en adquirir pagarés en incumplimiento o en procesos de ejecución.

Por otro lado, cuestionó la pertinencia de la jurisprudencia citada por la apelada para justificar la desestimación, al entender que no guardaba relación con las controversias jurídicas del caso. Añadió que en el caso *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila,* civil núm. K CD2009-0268, se había desestimado la causa de acción de ejecución de hipoteca y que solo quedaba pendiente la adjudicación de la reconvención, la cual era idéntica a la del caso de autos. Finalmente, sostiene que dicha determinación previa constituye cosa juzgada respecto a la procedencia de ventilar la reconvención, por lo que Luna estaría impedida de relitigar ese asunto. En consecuencia, solicitó que el tribunal declarara No Ha Lugar la solicitud de desestimación.

Evaluados los escritos de ambas partes, el 10 de junio de 2022, el TPI dictó una *Sentencia Parcial* que se notificó el 16 de junio de 2022 declarando Ha Lugar la *Solicitud de Desestimación de Reconvención* presentada por Luna.[14] En consecuencia, desestimó la reconvención presentada por la señora Toledo. Cabe señalar que, la apelante no recurrió en alzada impugnando este dictamen por lo que advino final, firme e inapelable.

---

[14] *Véase,* Entrada Núm. 84, SUMAC TPI.

Por otro lado, el 13 de junio de 2022, el TPI emitió una *Resolución* que se notificó el 16 de junio de 2022 en la cual atendió *Moción Sobre Ejercicio de Derecho a Retracto Litigioso* que presentó la señora Toledo el 20 de agosto de 2021. En esta resolvió que no procedía el ejercicio del derecho de retracto de crédito litigioso solicitado por la señora Toledo. Particularmente explicó que dicha figura, reconocida en el Código Civil de Puerto Rico de 1930, no aplicaba cuando la cesión involucra instrumentos negociables regidos por la Ley de Transacciones Comerciales, *supra*, como ocurre con el pagaré hipotecario en controversia. En apoyo a ello, citó la doctrina establecida por el Tribunal Supremo en *DLJ Mortgage Capital Inc. v. Santiago Martínez y otros*, supra, que excluye el retracto de crédito litigioso en este tipo de transacciones.

Asimismo, determinó que lo resuelto en el caso previo *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila* no constituía cosa juzgada para el pleito de autos. Señaló que la sentencia parcial emitida en ese caso se limitó a resolver un reclamo de cobro de dinero correspondiente a ese momento y no impedía que el acreedor instara posteriormente una nueva acción si ocurriera un nuevo incumplimiento. Además, indicó que, la determinación posterior del tribunal —en una vista evidenciaria sobre el retiro de fondos consignados— de que Santander no probó ser tenedor del pagaré para ese propósito específico, tampoco tiene efecto de cosa juzgada ni impide que otro acreedor demuestre en este pleito que es el tenedor del pagaré. En consecuencia, concluyó que (1) no procedía el retracto de crédito litigioso y (2) el caso anterior no impedía que se dilucidara la controversia en el presente pleito.

El 29 de junio de 2022, la señora Toledo presentó una solicitud de reconsideración en cuanto a la *Resolución* que dictó el TPI 13 de junio de 2022 declarando No Ha Lugar su solicitud para ejercer el derecho de retracto de crédito litigioso. En primer lugar,

alegó que el TPI erró al concluir que no procedía el retracto, pues según sostuvo, la apelada no cumplió con el requisito de notificación exigido por el Artículo 1425 del Código Civil de Puerto Rico de 1930, *supra*, el cual requería que la cesión del crédito fuese notificada al deudor y que constara la fecha de la cesión por modo auténtico. Argumentó que la única carta enviada provenía de una entidad llamada Planet Home Lending y únicamente informaba un cambio en el "servicing" del préstamo, sin mencionar la cesión del crédito ni la participación de Luna. Por ello, sostuvo que el término de nueve (9) días para ejercer el retracto nunca comenzó a transcurrir.

En segundo lugar, sostuvo que el TPI erró al concluir que lo resuelto en el caso *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila* no constituía cosa juzgada. Sostuvo que, en ese caso — determinación que aduce fue confirmada por el Tribunal de Apelaciones— se concluyó que el Banco Santander no logró demostrar el tracto sucesivo del pagaré ni que era su tenedor, lo que a su juicio impedía que cualquier cesionario posterior, incluyendo Luna, pudiese reclamar derechos derivados del mismo pagaré. Para sustentar su argumento, invocó el principio de tracto sucesivo reconocido por el Tribunal Supremo en *DLJ Mortgage Capital, Inc. v. García Ramos*, supra.

Además, planteó que Luna no demostró estar autorizada para dedicarse al negocio de préstamos o inversiones en Puerto Rico. Afirmó también que la apelada incumplió con el descubrimiento de prueba ordenado por el tribunal, lo que provocó que múltiples hechos quedaran admitidos conforme a la Regla 33 de Procedimiento Civil, 32 LPRA Ap. V, R. 33, incluyendo alegaciones relacionadas con la falta de notificación de la cesión, la ausencia de fecha en los endosos de pagarés y la supuesta falta de licencias para operar.

En vista de lo anterior, solicitó al TPI que dejara sin efecto la *Resolución* y determinara: (1) que no se cumplió con la notificación requerida para activar el término del retracto de crédito litigioso; (2) que Luna no estaba autorizada para operar como entidad de préstamos; (3) que el tracto sucesivo de la hipoteca se encontraba interrumpido conforme a lo resuelto previamente; y (4) que se ordenara a la apelada informar el precio pagado por el crédito para poder ejercer el retracto.

En respuesta, el 19 de julio de 2022, Luna presentó una oposición a la solicitud de reconsideración.[15] En primer lugar, sostuvo que no procedía el retracto de crédito litigioso, ya que la controversia involucraba la cesión de un instrumento negociable. Explicó que, conforme a lo resuelto por el Tribunal Supremo en *DLJ Mortgage Capital, Inc. v. Santiago Martínez*, supra, en este tipo de transacciones no aplica la figura civil del retracto de crédito litigioso. Por ello, afirmó que el TPI actuó correctamente al denegar de plano la solicitud de la señora Toledo, sin que fuese necesario evaluar otros planteamientos relacionados con la adquisición del préstamo o su notificación.

Por otro lado, argumentó que tampoco aplicaba la doctrina de cosa juzgada. Explicó que, conforme al Artículo 1204 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 3343, para que opere dicha doctrina debía existir perfecta identidad entre las cosas, las causas, las personas litigantes y la calidad en que estas participaron. Según indicó, esa identidad no se cumplía porque Luna no fue parte en el pleito previo *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila*, ni ocupaba la misma posición procesal que el Banco Santander en ese caso. Por lo tanto, concluyó que las determinaciones emitidas en el caso anterior no eran oponibles a

---

[15] *Véase*, Entrada Núm. 89, SUMAC TPI.

Luna y no podían invocarse como defensa en este pleito. En consecuencia, solicitó se denegara la reconsideración.

La atención de esta solicitud de reconsideración quedó paralizada por la presentación de una petición de quiebras por parte de la señora Toledo.[16] Posteriormente, culminó el pleito de quiebras y a solicitud de Luna[17], el 21 de julio de 2025, el TPI dictó una *Resolución y Orden* que se notificó el 22 de julio de 2025, mediante la cual ordenó la reapertura y continuación de los procedimientos en ejecución de hipoteca de manera *in rem.*[18] Además, se le autorizó a Luna a presentar una Segunda Demanda Enmendada según solicitado el 20 de febrero de 2025.[19]

El 4 de agosto de 2025, la señora Toledo presentó una *Contestación a Demanda Enmendada y Reconvención.*[20] En esta, reiteró que en el pleito *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila,* caso civil núm. K CD2009-0268, el Tribunal determinó que el banco no era tenedor de buena fe del pagaré que constituye el objeto de ejecución en el presente pleito. A base de ello, sostuvo que Luna estaba impedida de continuar con el procedimiento de ejecución de hipoteca. Asimismo, argumentó que tanto ese caso como la sentencia emitida por el Tribunal de Apelaciones en KLAN2016-0488 constituían cosa juzgada respecto a las controversias planteadas.

Por otro lado, mediante su reconvención la deudora formuló dos causas de acción. En la primera, reiteró una reclamación por el alegado impago de honorarios de abogados por servicios profesionales prestados a Doral Bank y Banco Santander, los cuales

---

[16] *Véase,* Entrada Núm. 94, SUMAC TPI.
[17] *Véase,* Entrada Núm. 103, SUMAC TPI.
[18] *Véase,* Entrada Núm. 115, SUMAC TPI.
[19] *Véase,* Entrada Núm. 104, SUMAC TPI.
[20] *Véase,* Entrada Núm. 123, SUMAC TPI.

estima en una suma no menor de doscientos setenta mil dólares ($270,000.00).[21]

En la segunda causa de acción, alegó haber sido objeto de persecución maliciosa por parte de Doral Bank y Banco Santander, al estos haber promovido un procedimiento de ejecución de hipoteca a pesar de, según sostuvo, carecer de legitimación activa. Además, afirmó, que Luna, en su carácter de sucesora de dichas entidades, respondía solidariamente por los alegados daños ocasionados. Con base en tales alegaciones, reclamó una indemnización por concepto de angustias mentales y daños en una cuantía no menor de quinientos mil dólares ($500,000.00).

Por su parte, el 14 de agosto de 2025, Luna presentó una *Moción de Sentencia Sumaria*.[22] Sostuvo que no existía controversia sobre hechos materiales en cuanto a la causa de acción de ejecución de hipoteca *in rem*. En apoyo a su planteamiento, alegó que, para garantizar el Préstamo núm. 2000015353, el 21 de octubre de 1998, la señora Toledo suscribió un pagaré hipotecario por la suma principal de $260,000.00, con intereses al tipo anual de 7%. Además, afirmó que era la actual tenedora de buena fe del pagaré, ya fuese por endoso o por causa onerosa, y que la deudora constituyó una hipoteca voluntaria sobre la finca núm. 1133 de la Sección Primera de San Juan, localizada en el sector de San Juan Antiguo. Asimismo, señaló que, como consecuencia del incumplimiento en el pago de la obligación garantizada, la deuda hipotecaria ascendía, al 19 de febrero de 2025, a la suma de $565,127.77, más la cantidad de $26,000.00 estipulada contractualmente para costas, gastos y honorarios de abogado.

---

[21] Cabe precisar que, dicha reclamación ya fue adjudicada por el TPI mediante *Sentencia Parcial* de 10 de junio de 2022 la cual advino final, firme e inapelable.
[22] *Véase*, Entrada Núm. 121, SUMAC TPI.

Para respaldar la existencia de hechos incontrovertidos, la acompañó copia de la escritura de hipoteca, copia del pagaré hipotecario con endoso a favor de Luna, una orden de descargo del procedimiento de quiebras, una certificación registral y una declaración jurada suscrita por su representante autorizado, el Lcdo. Rafael Hernández Miranda. En dicha declaración jurada se acreditó, bajo juramento, los hechos alegados en la segunda demanda enmendada relativos a la tenencia del pagaré hipotecario, el incumplimiento de la obligación de pago y el balance adeudado. Asimismo, reiteró que la solicitud de ejecución de hipoteca se limitaba exclusivamente al inmueble, dado que la deuda personal fue descargada en el proceso de quiebra. A la luz de lo anterior, solicitó que se dictara sentencia sumaria ordenando la ejecución *in rem* de la garantía hipotecaria para satisfacer la suma adeudada.

El 22 de agosto de 2025, Luna presentó una *Solicitud De Desestimación Por Falta De Jurisdicción Sobre La Materia (Primera Causa De Acción De La Reconvención).*[23] Allí solicitó la desestimación de la primera causa de acción de la reconvención por falta de jurisdicción sobre la materia. En esencia, argumentó que dicha reclamación —por alegado incumplimiento de contrato y cobro de dinero contra Doral Bank— surge de hechos ocurridos alrededor del año 2009 y que, tras el cierre de esa institución bancaria el 27 de febrero de 2015 por orden de la Oficina del Comisionado de Instituciones Financieras (OCIF), la Federal Deposit Insurance Corporation (FDIC) fue nombrada síndico.

Sostuvo que, al producirse el cierre del banco, cualquier reclamación contra Doral Bank debía tramitarse conforme al procedimiento administrativo obligatorio establecido en la *Financial Institutions Reform, Recovery and Enforcement Act*

---

[23] *Véase*, Entrada Núm. 124, SUMAC TPI.

(FIRREA) (12 U.S.C. § 1821 et seq.). Expuso que dicho estatuto disponía un mecanismo mandatorio para la presentación y adjudicación de reclamaciones ante la FDIC como síndico de instituciones bancarias fallidas, el cual debía agotarse antes de acudir a los tribunales.

En atención a lo anterior, señaló que la apelante no alegó ni demostró haber presentado su reclamación ante la FDIC ni haber agotado dicho procedimiento administrativo. Así pues, puntualizó que, conforme a la jurisprudencia federal y local, el incumplimiento con ese trámite privaba a los tribunales de jurisdicción para atender reclamaciones relacionadas con actos u omisiones de una institución bancaria fallida. Además, señaló que esta limitación jurisdiccional también aplicaba a las reconvenciones, pues estas constituían reclamaciones contra la institución fallida. Asimismo, argumentó que el hecho de que la reconvención se dirigiera contra Luna —y no directamente contra Doral Bank— no alteraba el análisis, ya que lo determinante era que la conducta imputada correspondía a la institución bancaria fallida.

En virtud de lo anterior, solicitó que, al amparo de la Regla 10.8(c) de Procedimiento Civil,32 LPRA Ap. V, R. 10.8(c) el TPI desestimara la primera causa de acción de la reconvención por falta de jurisdicción sobre la materia, debido a que la señora Toledo no agotó el procedimiento administrativo requerido por FIRREA.

Ese mismo día, a saber, el 22 de agosto de 2025, Luna presentó una segunda solicitud de desestimación intitulada *Solicitud De Desestimación (Segunda Causa De Acción De La Reconvención).*[24] En esta, solicitó la desestimación de la segunda causa de acción de la reconvención al amparo de la Regla 10.2 de

---

[24] *Véase*, Entrada Núm. 125, SUMAC TPI.

Procedimiento Civil de Puerto Rico, *supra,* por entender que esta no exponía una reclamación que justificara la concesión de un remedio.

En síntesis, argumentó que las alegaciones de la señora Toledo se referían a actuaciones imputadas a los antiguos acreedores hipotecarios, Doral Bank y Banco Santander Puerto Rico, ocurridas en los años 2014, 2016 y 2018, es decir, antes de que Luna adquiriera el crédito en el año 2021. Por ello, sostuvo que aun aceptando como ciertos los hechos alegados, la reconvención no establecía una base jurídica para imponer responsabilidad a Luna.

Añadió que, conforme a la jurisprudencia del Tribunal Supremo de Puerto Rico, una reclamación podía ser desestimada cuando del propio contenido de las alegaciones surgía que el reclamante no podría prevalecer bajo ningún estado de derecho aplicable. Asimismo, citó de forma persuasiva una decisión del Tribunal de Apelaciones que establecía que un comprador de una deuda no respondía por los daños causados por actuaciones de acreedores anteriores únicamente por haber adquirido el crédito.

En consecuencia, sostuvo que no se le podía imputar responsabilidad por las actuaciones de Doral Bank o Banco Santander, ya que su condición de cesionaria del crédito no conllevaba responsabilidad automática por los actos u omisiones de los acreedores previos. Por tal razón, solicitó al tribunal que desestimara la segunda causa de acción de la reconvención por insuficiencia en la exposición de una reclamación que ameritara remedio.

En cuanto a la solicitud de sentencia sumaria presentada por Luna, el 2 de septiembre de 2025, la señora Toledo presentó su oposición la cual intituló *Motion In Opposition To Motion For*

*Summary Judgment.*[25] En esta, solicitó que la solicitud de sentencia sumaria fuese denegada y que, en su lugar, se desestimara la demanda enmendada. En síntesis, argumentó que la apelada no tenía derecho a ejecutar el pagaré objeto del pleito, ya que no cualificaba como tenedora de buena fe del instrumento conforme a la Ley de Instrumentos Negociables de Puerto Rico, debido a que presuntamente lo adquirió en el año 2021 cuando la obligación llevaba más de 152 meses en mora, el pagaré ya había sido objeto de procedimientos de ejecución previamente desestimados y el endoso carece de fecha, lo que —según alegó— evidencia conocimiento de los defectos del instrumento.

Asimismo, sostuvo que un tribunal de igual jerarquía determinó previamente, luego de una vista evidenciaria, que el pagaré carecía de tracto para fines de ejecución hipotecaria, determinación que fue confirmada por el Tribunal de Apelaciones, por lo que constituía cosa juzgada y ley del caso, impidiendo que el tribunal revierta dicha adjudicación. De igual forma, planteó que Luna no presentó una reclamación en el procedimiento de quiebra de la deudora, por lo que no podía recuperar suma alguna conforme al 11 U.S.C. § 524.

Por otro lado, alegó que la moción de sentencia sumaria era prematura debido a que existían asuntos pendientes que requerían dilucidarse, incluyendo su derecho a mediación compulsoria en casos de ejecución hipotecaria, el ejercicio del retracto de crédito litigioso y la necesidad de realizar descubrimiento de prueba relacionado con la adquisición del pagaré, la fecha exacta de su compra, las licencias de la apelada para adquirir préstamos hipotecarios y la cadena de endosos del instrumento. Finalmente, sostuvo que existían endosos faltantes en el pagaré y que no se

---

[25] *Véase*, Entrada Núm. 127, SUMAC TPI.

había demostrado adecuadamente el tracto de titularidad entre los acreedores anteriores y la apelada, por lo que solicitó que se denegara la moción de sentencia sumaria y se desestimara la demanda.

Evaluadas las posturas de ambas partes, el 8 de octubre de 2025, TPI dictó una *Sentencia* que se notificó el 14 de octubre de 2025. En primer lugar, realizó las siguientes determinaciones de hechos:

1. Para garantizar el Préstamo hipotecario #2000015353, la codemandada Ana L. Toledo Dávila constituyó hipoteca voluntaria sobre el inmueble siguiente:

   URBANA: Casa número cincuenta y cinco (55) de la Calle General Contreras antes, hoy Calle del Sol, de dos plantas de piedra y azotea con solar de noventa y dos punto ochenta y nueve (92.89) metros cuadrados aproximadamente, en lindes al frente por el NORTE, con dicha calle; por el ESTE, derecha, Marcos Ballesteros; izquierda por el OESTE, Pedro Gil Ojeda; y espalda por el SUR, con casa número treinta y tres (33) de la Calle de la Cruz de Sucesión José Sabino Arroyo.

   Consta inscrita al Folio Ciento Ochenta y Seis (186) del Tomo Ciento Siete (107) de San Juan Antiguo, Registro de la Propiedad de Puerto Rico, Sección Primera (I) de San Juan, Finca Número Mil Ciento Treinta y Tres (1,133).

2. Ana L. Toledo Dávila es la titular registral del Inmueble descrito anteriormente.

3. Según Orden dictada el 6 de junio de 2024 por el Tribunal Federal de Quiebras en el caso núm. 22-02691-ESL (cap. 7), la codemandada Ana L. Toledo Dávila fue relevada/exonerada/descargada ("discharged") de su responsabilidad personal en cuanto al Préstamo #2000015353.

4. Luna Residential es la tenedora de buena fe, poseedora por causa onerosa y mediante endoso, con derecho a exigir el cumplimiento del pagaré hipotecario fechado del 21 de octubre de 1998 en la cantidad de $260,000.00, del cual emana el Préstamo #2000015353.

5. La actual causa de acción es solamente contra la propiedad "in rem", por lo que solo procede la ejecución de la garantía inmobiliaria.

6. La obligación monetaria relacionada al Préstamo #2000015353 garantizada por la hipoteca que grava el inmueble perteneciente a la Demandada asciende al 19 de febrero de 2025, a las siguientes sumas: $226,856.08 de principal adeudado; $264,169.30 de intereses al 19 de febrero de 2025, más los que continúen acumulándose hasta el saldo total de la deuda; $12,887.01 de cargos por demora, más los que continúen acumulándose hasta el saldo total de la deuda; $28,272.00 de sobregiro en "Escrow", $32,943.38 de gastos recobrables, para un total adeudado de $565,127.77.

7. A estas partidas se añade la suma autorizada, líquida y exigible, del 10% del principal reconocido en el pagaré hipotecario para costas, gastos y honorarios de abogado en caso de reclamación judicial, a saber, $26,000.00.

8. La ejecución de la garantía hipotecaria aquí solicitada también está relacionada a cualquier otra cantidad que tenga que desembolsar o adelantar la Demandante a tenor con los términos del Préstamo #2000015353.

9. El préstamo #2000015353 antes identificado fue dejado de pagar por los Demandados, procediéndose a acelerar la deuda y declararla vencida, líquida y exigible, conforme los términos de la hipoteca y del pagaré hipotecario.

Luego, concluyó que la apelada cumplió con los requisitos para la concesión de la sentencia sumaria al presentar hechos materiales incontrovertidos respaldados por prueba documental. Indicó que, entre la evidencia presentada se incluyó la escritura de hipoteca, copia del pagaré hipotecario debidamente endosado a favor de Luna, certificación registral, la orden de descargo del caso de quiebras y una declaración jurada del representante autorizado de la apelada. Concluyó que, mediante dicha prueba se acreditó la existencia de la deuda, el incumplimiento de pago por parte de la

señora Toledo y la condición de Luna como tenedor de buena fe del pagaré hipotecario.

Por otro lado, determinó que la señora Toledo no cumplió con los requisitos de la Regla 36.3 de Procedimiento Civil, *supra*, para oponerse a la moción de sentencia sumaria, ya que no refutó de forma específica y detallada los hechos propuestos por Luna ni presentó evidencia que los controvirtiera. Expresó que, en lugar de ello, se limitó a reiterar argumentos legales y a insistir en su defensa de cosa juzgada basada en un pleito anterior, sin presentar prueba que desvirtuara los hechos planteados en la moción. En consecuencia, sostuvo que, los hechos propuestos por la apelada se tuvieron por admitidos.

En fin, a la luz de la prueba presentada, concluyó que existía una deuda líquida, vencida y exigible, así como el incumplimiento de pago por parte de la señora Toledo y la existencia de la garantía hipotecaria debidamente inscrita. Además, determinó que el pagaré hipotecario contenía el endoso requerido conforme a la ley aplicable, por lo que Luna tenía legitimación para exigir el cumplimiento del instrumento como tenedor del mismo.

En cuanto al planteamiento de cosa juzgada formulado por la apelante, señaló que dicho argumento ya había sido atendido previamente mediante *Resolución* emitida el 10 de junio de 2022. No obstante, indicó que sobre esa determinación quedó pendiente una moción de reconsideración presentada por la señora Toledo, así como una moción en cumplimiento de orden presentada por Luna en oposición a dicha reconsideración. Recalcó que, el trámite de estas mociones se vio afectado por la radicación de un procedimiento de quiebras. Sin embargo, finalmente resolvió denegar la moción de reconsideración por entender que no procedía en derecho.

Por otra parte, examinó las causas de acción incluidas en la reconvención presentada por la apelante. En cuanto a la primera causa de acción, relacionada con el cobro de honorarios de abogados contra los bancos Doral Bank y Banco Santander, indicó que esta ya había sido desestimada mediante *Sentencia Parcial* emitida el 10 de junio de 2022 y notificada el 16 de junio de 2022. Puntualizó que, dicha sentencia advino final, firme e inapelable, por lo que ese reclamo quedó definitivamente resuelto.

En relación con la segunda causa de acción de la reconvención, mediante la cual la apelante reclamó daños por alegado incumplimiento con los requisitos establecidos en la legislación federal conocida como *Dodd-Frank Wall Street Reform and Consumer Protection Act*, concluyó que dicha reclamación estaba dirigida a los acreedores originales del préstamo hipotecario, a saber, Doral Bank y Banco Santander. En ese sentido, determinó que, aun tomando como ciertos los hechos alegados por la apelante, estos no justificaban la concesión de un remedio en contra de Luna, quien compareció en el pleito únicamente en su carácter de actual tenedor del pagaré hipotecario. Por ello, concluyó que no procedía sostener una causa de acción contra Luna basada en supuestos actos u omisiones atribuibles a los acreedores originales del préstamo.

En vista de lo anterior, declaró Ha Lugar la moción de sentencia sumaria y las dos mociones de desestimación presentadas por Luna. Así pues, dictó sentencia en ejecución de hipoteca *in rem*. Además, anotó la rebeldía de los miembros de las sucesiones demandadas, desestimó con perjuicio la reconvención presentada por la apelante y dispuso que la ejecución de la sentencia solo podrá dirigirse contra el inmueble hipotecado, debido al descargo de la deuda personal en el procedimiento de quiebras. Finalmente, ordenó que, transcurridos treinta (30) días desde la notificación de la

sentencia sin que surja gestión que afecte su finalidad, se expidiera el correspondiente mandamiento de ejecución para la venta del inmueble en subasta pública y, de ser necesario, el lanzamiento de los ocupantes de la propiedad.

Inconforme con este dictamen, el 27 de octubre de 2025, la señora Toledo presentó una solicitud de reconsideración.[26] Por su parte, el 11 de noviembre de 2025, Luna presentó su oposición a la reconsideración.[27] Finalmente, el 17 de noviembre de 2025, la apelante presentó su *Dúplica.*[28] Atendido estos escritos, el 26 de enero de 2026, el TPI dictó una *Resolución* que se notificó el 27 de enero de 2026 declarando No Ha Lugar la solicitud de reconsideración.[29] Aún en desacuerdo, el 26 de febrero de 2026, la señora Toledo presentó el recurso de epígrafe y formuló los siguientes señalamientos de error:

> **ERRÓ EL TRIBUNAL DE INSTANCIA AL DICTAR SENTENCIA SUMARIA A FAVOR DE LUNA A PESAR DE LOS HECHOS MATERIALES EN CONTROVERSIA Y LOS QUE NO LO ESTÁN QUE JUSTIFICAN LA DESESTIMACIÓN DEL CASO.**

> **ERRÓ EL TPI AL NO DESESTIMAR LA DEMANDA PORQUE A LO ÚNICO QUE LUNA TENIA DERECHO PREVIO A LA DESCARGA DE LAS DEUDAS PERSONALES DE LA APELANTE POR PARTE DE LA CORTE DE QUIEBRAS ERA, A LO SUMO, UN CRÉDITO PERSONAL AL CUAL RENUNCIÓ.**

> **ERRÓ EL TRIBUNAL AL DENEGAR EL DERECHO AL RETRACTO DE CRÉDITO LITIGIOSO.**

Atendido el recurso, el 27 de febrero de 2026, emitimos una *Resolución* concediéndole a la apelada hasta el 18 de marzo de 2026 para presentar su alegato en oposición. Oportunamente, Luna presentó su *Alegato en Oposición* y negó que el TPI cometiera los errores que la señora Toledo le imputó. Con el beneficio de la

---

[26] *Véase*, Entrada Núm. 139, SUMAC TPI.
[27] *Véase*, Entrada Núm. 141, SUMAC TPI.
[28] *Véase*, Entrada Núm. 142, SUMAC TPI.
[29] *Véase*, Entrada Núm. 146, SUMAC TPI.

comparecencia de ambas partes, procedemos a atender el asunto ante nos. *Veamos.*

## II.

## -A-

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, 32 LPRA Ap. V, R. 36, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones, contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Roldan Flores v. M. Cuebas et al.,* 199 DPR 664, 676 (2018).

Es menester destacar que, solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* 185 DPR 288, 299 (2012). Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así,

"[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria, sino que tiene que ser una cuestión que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Aponte Valentín V. Pfizer Pharm.*, 208 DPR 263, 277 (2021).

La Regla 36.2 de Procedimiento Civil, *supra,* permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Mun. de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al., supra,* pág. 677. Por el contrario, esa persona viene obligada a enfrentar la moción de su adversatario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo,* supra, pág. 432. Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria. Al amparo de dicha regla, en la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos

debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya.

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra et al.*, 186 DPR 713, 757 (2012).

Ahora bien, según *Verá v. Dr. Bravo*, 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el TPI al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al TPI. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del TPI en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia,

debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-B-**

El Art. 96 de la Ley Núm. 210-2015, según enmendada, conocida como la *Ley del Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6133 (Ley de Registro de Propiedad), dispone que "en los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". Conforme a ello, el Tribunal Supremo ha resuelto que a la hipoteca que se constituye para garantizar instrumentos negociables o títulos transferibles por endoso o al portador le aplica la Ley de Transacciones Comerciales. *DLJ Mortgage v. SLG Santiago-Ortiz*, supra, pág. 963.

La Sec. 2-104 de la Ley de Transacciones Comerciales, 19 LPRA sec. 504(a), define un instrumento negociable como una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden si el mismo:

(1) Es pagadero al portador o a la orden al momento o cuando primero adviene a la posesión de un tenedor;

(2) Es pagadero a la presentación o en una fecha específica; y

(3) No especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero pero la promesa u orden puede contener (i) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (ii) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (iii) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor. 19 LPRA sec. 504(a).

A su vez, la Sec. 2-103 de la Ley de Transacciones Comerciales, 19 LPRA sec. 503(a)(9), define una promesa como "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". Conforme a ello, el Tribunal concluyó que un pagaré hipotecario es una "promesa", es decir, un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar. *DLJ Mortgage v. SLG Santiago-Ortiz, supra,* pág. 963.

Además, la Ley de Transacciones Comerciales, *supra,* regula quiénes tienen derecho a exigir el cumplimiento de un instrumento negociable. En específico, el Art. 2-301 de la referida ley, 19 LPRA sec. 601, establece que la persona con derecho a exigir el cumplimiento de un instrumento significa:

> (i) el tenedor del instrumento, (ii) una persona que no es tenedor[,] pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de la Sección 2-309 y de la Sección 2-418(d).Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento[,] aunque la persona no sea el dueño del instrumento o lo posea indebidamente. 19 LPRA sec. 601.

Ahora bien, el referido estatuto define el término "tenedor" como la persona que tiene la posesión del instrumento, cuando este es pagadero al portador, o, en el caso de un instrumento pagadero a una persona identificada, cuando dicha persona identificada posee el instrumento. Sec. 1-201(20) de la Ley de Transacciones Comerciales, 19 LPRA sec. 451(20). Conforme a este marco normativo, la persona legitimada para exigir el cumplimiento de un instrumento negociable es su tenedor. Art. 2-301 de la Ley de Transacciones Comerciales, *supra.* De igual forma, cuando el tenedor de un pagaré hipotecario negocia válidamente el instrumento, la hipoteca que lo garantiza se transfiere automáticamente al nuevo tenedor. *Des. Caribe v. Ven-Lour Enterprises,* 198 DPR 290, 300 (2017).

En ese contexto, la condición de tenedor de buena fe se acredita mediante la autenticidad del instrumento y de las firmas que en él constan. Así, en una causa de acción dirigida a exigir el cumplimiento de un instrumento negociable, una vez se admite o se prueba la validez de las firmas, el demandante que produce el pagaré tiene derecho a reclamar su pago si demuestra que es el tenedor del mismo. Sec. 2-308 de la Ley de Transacciones Comerciales, 19 LPRA sec. 608. En los casos en que el instrumento es pagadero a una persona identificada, su negociación requiere tanto la transferencia de la posesión del instrumento como su correspondiente endoso por el tenedor. Sec. 2-201(b) de la Ley de Transacciones Comerciales, 19 LPRA sec. 551(b). A su vez, el endoso aludido refiere a:

> [U]na firma, que no sea la de un signatario como firmante, librador o aceptante, que por sí sola o acompañada de otras palabras se añade en un instrumento con el propósito de (i) negociar el instrumento, (ii) restringir el pago del instrumento, o (iii) incurrir en la responsabilidad del endosante respecto al instrumento, pero independientemente de la intención del signatario, una firma y las palabras que la acompañen es un endoso a menos que las palabras que acompañan la firma, los términos del instrumento, el lugar donde está la firma u otras circunstancias no ambiguas indiquen que la firma fue puesta con un propósito distinto al de un endoso. Para el propósito de determinar si una firma está añadida en un instrumento, un papel adherido al instrumento se considera parte del instrumento. Sec. 2-204(a) de la Ley de Transacciones Comerciales, 19 LPRA sec. 554(a).

Por otro lado, el ordenamiento jurídico reconoce a favor del tenedor de un instrumento negociable una presunción legal de validez del pagaré y de que este fue otorgado por causa justa y onerosa. *Pereira v. Commercial Transport Co.*, 73 DPR 326, 330 (1952). A partir de dicha presunción, no se le exige al tenedor alegar ni presentar prueba dirigida a demostrar que es dueño del pagaré, ni que lo adquirió de buena fe, ni tampoco detallar la causa onerosa específica que motivó su adquisición. En efecto, la mera posesión del instrumento equivale a título suficiente y le confiere legitimación para presentarlo al cobro, dado que el pagaré nace al tráfico jurídico

como un documento negociable con valor. Por consiguiente, corresponde a quien impugne dicha legitimación asumir el peso de la prueba para demostrar lo contrario. *Arroyo Pratts v. Tribunal Superior*, 98 DPR 149 (1969).

-C-

El Art. 1425 del Código Civil de 1930, 31 LPRA sec. 3950, vigente al momento del contrato y las obligaciones contraídas por las partes en el presente pleito, dispone lo siguiente en cuanto a la cesión del crédito litigioso:

> Vendiéndose un crédito litigioso, el deudor tendrá derecho a extinguirlo, reembolsando al cesionario el precio que pagó, las costas que se le hubiesen ocasionado y los intereses del precio desde el día en que éste fue satisfecho.
>
> **Se tendrá por litigioso un crédito desde que se conteste a la demanda relativo al mismo.**
>
> El deudor podrá usar de su derecho dentro de nueve (9) días, contados desde que el cesionario le reclame el pago. (Énfasis nuestro).

Al interpretar la aplicación de dicha figura y su razón de ser, el Tribunal Supremo ha explicado que:

.          .          .          .          .          .          .

> El crédito litigioso, como cualquier otro crédito, puede cederse. Una vez se cede el crédito litigioso, o se vende como afirma el Art. 1425 del Código Civil, *supra*, el deudor tiene derecho a extinguirlo mediante el pago al cesionario del precio que éste realmente pagó, las costas y los intereses. La doctrina conceptúa este derecho como una restricción a la cesión de créditos litigiosos y la denomina "retracto litigioso" por tratarse de un retracto a favor del deudor cedido. *Consejo de Titulares v. C.R.U.V.*, 132 DPR 707, 726 (1993).

Conforme al Art. 1425 del Código Civil de 1930, *supra*, un crédito se tendrá por litigioso desde que se conteste la demanda relativa al mismo. Es decir, se refiere a aquel crédito sobre el que se ha entablado contienda judicial, pudiendo el deudor liberarse del pleito pagando al cesionario las partidas ya descritas. J.R. Vélez Torres, Derecho de Obligaciones, 2da ed. rev., San Juan, Universidad Interamericana de Puerto Rico, 1997, pág. 254.

En lo pertinente al caso que nos ocupa, en *DLJ Mortgage v. SLG Santiago-Ortiz,* 202 DPR 950 (2019), el Tribunal Supremo tuvo ante sí la controversia de si procedía el ejercicio de la figura del retracto de crédito litigioso sobre la cesión de un pagaré hipotecario. El Tribunal Supremo determinó que la Ley de Transacciones Comerciales, *supra,* desplazó las disposiciones del Código Civil referentes a la figura del crédito litigioso, haciéndolas inaplicables a las transferencias de instrumentos negociables otorgadas a su amparo. Por tanto, la figura del retracto de crédito litigioso no aplica en los casos de cesión o venta de un pagaré hipotecario. *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR, supra, pág. 968.

El Tribunal Supremo se amparó en la Ley de Transacciones Comerciales, en consonancia con lo dispuesto en la Ley del Registro de la Propiedad, *supra.* Toda vez que el Art. 96 de la Ley del Registro de la Propiedad, 30 LPRA sec. 6133, establece que, "[e]n los casos de ejecución de hipotecas que garantizan instrumentos negociables, deberá darse cumplimiento a las disposiciones de la legislación mercantil vigente relativas al cobro de tales instrumentos". 30 LPRA sec. 6133.

Por lo tanto, para que apliquen las disposiciones mercantiles, según lo dispuesto en la Ley del Registro de la Propiedad, *supra,* los pagarés hipotecarios deben caracterizarse como instrumentos negociables conforme la legislación mercantil vigente. En atención a dicho razonamiento, el Tribunal Supremo concluyó que un pagaré hipotecario constituye una promesa comprendida dentro de la definición de instrumentos negociables de la Ley de Transacciones Comerciales. *DLJ Mortgage v. SLG Santiago-Ortiz*, 202 DPR, supra, pág. 963. Para llegar a esta conclusión el Tribunal Supremo interpretó, además, la definición de un instrumento negociable conforme a la referida Ley.

La Ley de Transacciones Comerciales define un instrumento negociable como "una **promesa** o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden […]". Sec. 2-104 de la Ley de Transacciones Comerciales, 19 LPRA sec. 504(a). A su vez, una promesa está definida como "un compromiso escrito de pagar dinero suscrito por la persona que se obliga a pagar". Sec. 2-103 de la Ley de Transacciones Comerciales, 19 LPRA sec. 503(a)(9). Por lo tanto, si el pagaré hipotecario es una promesa, entonces, este está comprendido dentro de la definición de instrumento negociable.

Establecido que la Ley de Transacciones Comerciales comprende el pagaré hipotecario, en Capítulo 9 se regula lo relacionado a la venta o transmisión de estos. Sec. 9-109 de la Ley de Transacciones Comerciales, 19 LPRA sec. 2219(a)(3). La venta o transmisión de los pagarés hipotecarios constituye una transacción al amparo del Capítulo 9 de la Ley de Transacciones Comerciales. Es así, aunque dicho Capítulo excluya transacciones sobre bienes inmuebles, pues **"el mero hecho de estar garantizado por una hipoteca no derrota el carácter mueble de un pagaré hipotecario"**. *DLJ Mortgage v. SLG Santiago-Ortiz*, supra, pág. 965; *Des. Caribe v. Ven-Lour Enterprises*, supra, pág. 306.

Regulada la venta o transmisión del pagaré hipotecario por el Capítulo 9 de la Ley de Transacciones Comerciales, las disposiciones del Código Civil referentes al crédito litigioso no aplican. Esto se debe a que en la Sección 9-109 del Capítulo 9 de la Ley de Transacciones Comerciales, 19 LPRA sec. 2219(e), se establece que "[l]as disposiciones del Código Civil de Puerto Rico respecto a la prenda y respecto a la transmisión de créditos no aplicaran a las transacciones regidas por este Capítulo". *DLJ Mortgage v. SLG Santiago-Ortiz*, supra, págs. 966-967.

En su análisis, nuestro Más Alto Foro esbozó, además, lo siguiente:

[R]especto a la figura del retracto de crédito litigioso, conviene señalar también que el propio Código Civil limita su aplicabilidad. Así el Art. 1417a del Código Civil de Puerto Rico, 31 LPRA sec. 3942ª establece que en el contexto de la cesión de una cosa litigiosa, el retracto del crédito litigioso, "**no es aplicable a la cesión de un instrumento negociable, traspasado de buena fe y por valor recibido, antes de su vencimiento**". (Énfasis suplido). Es decir, que cuando la cesión de cosa litigiosa trate de un instrumento negociable serán inaplicables las disposiciones sobre la figura del retracto de crédito litigioso.

Además, el Art. 1427 del Código Civil de Puerto Rico, 31 LPRA sec. 3961, dispone como sigue: "Todo lo dispuesto en esta parte se entiende con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria". Con lo cual, el Código nos remite al régimen registral inmobiliario cuando la cesión del crédito litigioso involucre un bien inmueble. *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, pag. 961.

Finalmente, en *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, págs.967-968 el Tribunal Supremo concluyó lo siguiente:

Primeramente, el propio Código Civil, al regular la cesión de una cosa litigiosa en su Art.1417a, *supra,* aclara la inaplicabilidad de éste cuando se refiere "a la cesión de un documento negociable, traspasado de buena fe, y por valor recibido, antes de su vencimiento".

Además, en el Art. 1427 del Código Civil de Puerto Rico, *supra,* se aclara que las disposiciones sobre la cesión de créditos "se entiende[n] con sujeción a lo que respecto de bienes inmuebles se determine en la Ley Hipotecaria". Y esta a su vez nos recuerda que cuando una hipoteca se constituya para garantizar instrumentos negociables o títulos transferibles por endoso o al portador, **el derecho hipotecario se entenderá transferido con el instrumento.** Art. 91 de la Ley Núm. 210-2015, *supra.* Por su parte, el Art. 98 de la misma ley a su vez, nos informa que en los casos de ejecución de hipotecas que garantizan instrumentos negociables **deberá darse cumplimiento a las disposiciones de la Ley de Transacciones Comerciales.** (Énfasis suplido)

**-D-**

El Art. 1204 del Código Civil de 1930, 31 LPRA sec. 3343, regula lo concerniente a la defensa de cosa juzgada y establece lo siguiente:

[...]

Contra la presunción de que la cosa juzgada es verdad, sólo será eficaz la sentencia ganada en juicio de revisión.

**Para que la presunción de cosa juzgada surta efecto en otro juicio, es necesario que entre el caso resuelto por la sentencia y aquél en que ésta sea invocada, concurra la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron.**

[...]

Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen derecho a exigirlas u obligación de satisfacerlas.

La doctrina de cosa juzgada tiene el propósito de finalizar los litigios que fueron adjudicados de forma definitiva y, de este modo, "garantizar la certidumbre y seguridad de los derechos declarados mediante una resolución judicial para evitar gastos adicionales al Estado y a los litigantes". *Presidential v. Transcaribe*, 186 DPR 263, 273-274 (2012). Así pues, esta defensa tiene el efecto de evitar que se relitiguen asuntos que fueron o que pudieron litigarse y adjudicarse en el pleito anterior. *Parrilla v. Rodríguez*, 163 DPR 263, 268 (2004). Según el Art. 1204 del Código Civil de 1930, *supra*, "la presunción de cosa juzgada sólo tendrá efecto si existe la más perfecta identidad de las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron". *Presidential v. Transcaribe*, *supra*, pág. 274. Es decir, el efecto fatal de la doctrina de cosa juzgada es que la sentencia decretada en un pleito anterior impide que, en un pleito posterior, se litiguen entre las mismas partes y sobre la misma causa de acción y cosas, las cuestiones ya litigadas y adjudicadas. *P.R. Wire Prod. v. C. Crespo & Assoc.*, 175 DPR 139,151 (2008).

Ahora bien, nuestra Más Alta Curia también ha reconocido la figura jurídica del impedimento colateral por sentencia como una modalidad de la doctrina de cosa juzgada. Íd., pág. 276. Al igual que la doctrina de cosa juzgada, el propósito de esta figura es promover la economía procesal y judicial. Íd. Además, persigue amparar a los ciudadanos del acoso que necesariamente conlleva litigar en más de una ocasión hechos ya adjudicados. *P.R. Wire Prod. v. Crespo & Assoc.,* supra, págs. 152-153. En particular, la doctrina de impedimento colateral por sentencia impide que se litigue en un pleito posterior un hecho esencial que fue adjudicado mediante sentencia final en un litigio anterior, aunque estén implicadas causas de acción distintas". *A & P Gen. Contractors v. Asoc. Caná,* 110 DPR 753, 762 (1981).

Por último, es menester señalar que la doctrina de impedimento colateral por sentencia no aplica cuando la parte contra la cual se interpone (1) no ha tenido la oportunidad de litigar previamente el asunto y (2) cuando no ha resultado ser la parte perdidosa en un litigio anterior. *Beníquez et al. v. Vargas et al.*, 184 DPR 210, 225-226 (2012). Asimismo, no procede la aplicación de este concepto en asuntos que pudieron ser litigados y determinados en el primer caso y no lo fueron, sino que su aplicación se limita a aquellas cuestiones que, en efecto, fueron litigadas y adjudicadas. Íd.

### III.

En el presente recurso, la señora Toledo impugnó una *Sentencia* que el TPI emitió el 8 de octubre de 2025 y notificó el 14 de octubre de 2025 mediante la cual, en esencia, declaró Ha Lugar la *Moción de Sentencia Sumaria* y las dos solicitudes de desestimación que presentó Luna. Particularmente, en su primer señalamiento de error, alegó que el TPI erró al dictar sentencia sumaria a favor de Luna a pesar de que, a su entender, los hechos

materiales en controversia y los que no lo están justifican la desestimación del caso. En su segundo señalamiento de error, planteó que, el TPI erró al no desestimar la Demanda, ya que previo al descargo de sus deudas personales en el procedimiento de quiebras, Luna únicamente tenía, en el mejor de los casos, un crédito de naturaleza personal. Argumentó que, al renunciar a dicho crédito, la apelada carecía de derecho para continuar con la acción presentada en su contra. Finalmente, en su tercer señalamiento de error, sostuvo que el TPI erró al denegar su derecho al retracto de crédito litigioso.

Como es sabido, es norma reiterada que el mecanismo de sentencia sumaria, consagrado en la Regla 36 de Procedimiento Civil, *supra*, persigue adelantar una solución justa, rápida y económica de los pleitos, conforme al mandato rector de la Regla 1 de Procedimiento Civil, *supra*. Procede su concesión cuando de los documentos que obran en autos surge que no existe controversia real y sustancial sobre hechos esenciales y pertinentes y el derecho aplicable así lo justifica. *Roldán Flores v. M. Cuebas et al.*, supra, pág. 676; Regla 36.3(e) de Procedimiento Civil, *supra*.

Al revisar la concesión de una solicitud de sentencia sumaria, este Tribunal Apelativo examina el expediente de *novo* y aplica los mismos criterios que el TPI. *Verá et al. v. Dr. Bravo*, supra, págs. 334-335; *Meléndez González et al. v. M. Cuebas*, supra, pág. 118. Nos corresponde, además, evaluar si la moción y su oposición cumplieron con los requisitos formales de la Regla 36.3 de Procedimiento Civil, *supra*, y determinar si existen hechos materiales en controversia o si, por el contrario, solo resta aplicar el derecho a hechos no disputados. *Rivera Matos et al. v. Triple-S et al.*, supra, pág. 1025.

Examinado el expediente, resolvemos que la señora Toledo incumplió cabalmente con los requisitos de la Regla 36.3 de

Procedimiento Civil, *supra.* En lugar de controvertir de forma específica y detallada los hechos propuestos por Luna mediante referencia puntual a prueba admisible que los desvirtuara, la apelante se limitó esencialmente a reiterar argumentos jurídicos previamente planteados, así como a invocar defensas afirmativas relacionadas con alegadas determinaciones emitidas en un pleito anterior. Tal proceder resulta insuficiente para generar una controversia real y sustancial sobre hechos materiales que impida la adjudicación sumaria del caso.

A la luz de lo antes expuesto y de un examen del expediente y la prueba documental presentada, damos por admitidos y determinamos que los siguientes hechos no están en controversia:

1. Para garantizar el Préstamo hipotecario #2000015353, la codemandada Ana L. Toledo Dávila constituyó hipoteca voluntaria sobre el inmueble siguiente:

   URBANA: Casa número cincuenta y cinco (55) de la Calle General Contreras antes, hoy Calle del Sol, de dos plantas de piedra y azotea con solar de noventa y dos punto ochenta y nueve (92.89) metros cuadrados aproximadamente, en lindes al frente por el NORTE, con dicha calle; por el ESTE, derecha, Marcos Ballesteros; izquierda por el OESTE, Pedro Gil Ojeda; y espalda por el SUR, con casa número treinta y tres (33) de la Calle de la Cruz de Sucesión José Sabino Arroyo.

   Consta inscrita al Folio Ciento Ochenta y Seis (186) del Tomo Ciento Siete (107) de San Juan Antiguo, Registro de la Propiedad de Puerto Rico, Sección Primera (I) de San Juan, Finca Número Mil Ciento Treinta y Tres (1,133). *Véase*, **Anejo 1 de la *Moción de Sentencia Sumaria*, Escritura #692, sobre Primera Hipoteca, otorgada el 21 de octubre de 1998, ante el Notario Público Julián Antonio Parrilla Boria.**

2. Ana L. Toledo Dávila es la titular registral del Inmueble descrito anteriormente. *Véase*, **Anejo 2 de la *Moción de Sentencia Sumaria*, Certificación Registral del 31 de julio de 2025, en relación con la Finca #1133 de la Sección**

**Primera (I) de San Juan, ubicada en San Juan Antiguo.**

3. Según Orden dictada el 6 de junio de 2024 por el Tribunal Federal de Quiebras en el caso núm. 22-02691-ESL (cap. 7), la apelante, Sra. Ana L. Toledo Dávila, fue relevada/exonerada/descargada ("discharged") de su responsabilidad personal en cuanto al Préstamo #2000015353. *Véase*, **Anejo 3 de la *Moción de Sentencia Sumaria*, "Order of Discharge", dictada el 6 de junio de 2024 por Enrique S. Lamoutte, Juez de la Corte Federal de Quiebra.**

4. Luna es la tenedora de buena fe, poseedora por causa onerosa y mediante endoso, con derecho a exigir el cumplimiento del pagaré hipotecario fechado del 21 de octubre de 1998 en la cantidad de $260,000.00, del cual emana el Préstamo #2000015353. *Véase*, **Anejo 4 de la Moción de Sentencia Sumaria, Pagaré Hipotecario del 21 de octubre de 1998.**

5. La actual causa de acción es solamente contra la propiedad "in rem", por lo que solo procede la ejecución de la garantía inmobiliaria. *Véase*, **Anejo 5 de la *Moción de Sentencia Sumaria*, Declaración Jurada del 7 de agosto de 2025, párrafo #7.**

6. La obligación monetaria relacionada al Préstamo #2000015353 garantizada por la hipoteca que grava el inmueble perteneciente a Luna asciende al 19 de febrero de 2025, a las siguientes sumas: $226,856.08 de principal adeudado; $264,169.30 de intereses al 19 de febrero de 2025, más los que continúen acumulándose hasta el saldo total de la deuda; $12,887.01 de cargos por demora, más los que continúen acumulándose hasta el saldo total de la deuda; $28,272.00 de sobregiro en "Escrow", $32,943.38 de gastos recobrables, para un total adeudado de $565,127.77. *Véase*, **Anejo 5 de la Moción de Sentencia Sumaria, Declaración Jurada del 7 de agosto de 2025, párrafo #8.**

7. A estas partidas se añade la suma autorizada, líquida y exigible, del 10% del principal reconocido en el pagaré hipotecario para costas, gastos y honorarios de abogado en caso de reclamación judicial, a saber, $26,000.00. *Véase*, **Anejo 5 de la *Moción de Sentencia Sumaria*, Declaración Jurada del 7 de agosto de 2025, párrafo #9.**

8. La ejecución de la garantía hipotecaria aquí solicitada también está relacionada a cualquier otra cantidad que tenga que desembolsar o adelantar la Demandante a tenor con los términos del Préstamo #2000015353. ***Véase,*** **Anejo 5 de la *Moción de Sentencia Sumaria*, Declaración Jurada del 7 de agosto de 2025, párrafo #10.**

9. El préstamo #2000015353 antes identificado fue dejado de pagar por los Demandados, procediéndose a acelerar la deuda y declararla vencida, líquida y exigible, conforme los términos de la hipoteca y del pagaré hipotecario. ***Véase,*** **Anejo 5 de la *Moción de Sentencia Sumaria*, Declaración Jurada del 7 de agosto de 2025, párrafo #11.**

Estos hechos surgen de la *Moción de Sentencia Sumaria* presentada por Luna y de los anejos acompañados a la moción, y no fueron debidamente controvertidos conforme exige la Regla 36.3 de Procedimiento Civil, *supra.*

Así delimitado el marco fáctico, resta aplicar el derecho sustantivo pertinente para determinar si, como sostiene la apelante, procede la desestimación de la Demanda a la luz de las siguientes controversias jurídicas: (1) si lo resuelto en el caso *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila,* civil núm. K CD2009-0268, constituye cosa juzgada respecto al caso de autos y, en consecuencia, invalida la cesión posterior del pagaré hipotecario; (2) si la omisión de presentar una reclamación ("proof of claim") en el procedimiento de quiebras tuvo el efecto jurídico de constituir una renuncia a cualquier remedio ulterior, incluyendo la ejecución de la garantía real; y (3) si, bajo las circunstancias particulares del caso, procede la aplicación de la figura del retracto de crédito litigioso.

En su primer señalamiento de error, la apelante sostiene que el TPI incidió al no desestimar la Demanda, al entender que la apelada carecía de legitimación para instar la acción de ejecución de hipoteca y que, además, procedía la aplicación de las doctrinas de cosa juzgada e impedimento colateral por sentencia a raíz de

determinaciones emitidas en un pleito anterior. No le asiste la razón. *Veamos.*

En los casos de ejecución de hipotecas que garantizan instrumentos negociables, el ordenamiento jurídico dispone expresamente que el análisis debe realizarse conforme a la legislación mercantil vigente. Así lo establece el Art. 96 de la Ley del Registro de la Propiedad, *supra,* al requerir que en estos casos se dé cumplimiento a las disposiciones relativas al cobro de instrumentos negociables. En armonía con ello, el Tribunal Supremo ha resuelto que los pagarés hipotecarios constituyen instrumentos negociables sujetos a la Ley de Transacciones Comerciales, *supra,* por tratarse de promesas escritas de pago de dinero que cumplen con los requisitos estatutarios correspondientes. *DLJ Mortgage v. SLG Santiago-Ortiz, supra,* pág. 963.

Conforme a la normativa mercantil, la persona con derecho a exigir el cumplimiento de un instrumento negociable es su tenedor: quien posee el instrumento cuando este es pagadero al portador, o quien lo posee debidamente endosado cuando es pagadero a una persona identificada. Sec. 1-201(20) de la Ley de Transacciones Comerciales, *supra.* En el presente caso, la apelada produjo el pagaré hipotecario con el endoso correspondiente y acompañó su solicitud de sentencia sumaria con prueba documental que evidencia su posesión del instrumento, la existencia de la obligación y el incumplimiento en el pago.

La ley presume que un instrumento producido por su tenedor es auténtico y fue otorgado por causa justa y onerosa, lo que confiere legitimación para exigir su cumplimiento. *Pereira v. Commercial Transport Co.,* supra, pág. 330; Sec. 2-308 de la Ley de Transacciones Comerciales, *supra.* Esta presunción protege al tenedor de buena fe y solo puede ser desvirtuada mediante prueba

concreta y admisible que demuestre adquisición irregular, fraude o falta de valor recibido.

La condición de tenedora de buena fe de la apelada surge del cumplimiento con los requisitos sustantivos que establece la ley mercantil. La mera repetición de cuestionamientos sobre la cadena de titularidad o supuestas irregularidades en transferencias previas no basta para quebrar la presunción de buena fe. En el caso de autos, la señora Toledo no presentó evidencia que acreditara fraude, mala fe o adquisición indebida del pagaré por parte de la apelada, limitándose a reiterar argumentos jurídicos previamente rechazados por el TPI. Por consiguiente, la apelante no logró desvirtuar la legitimación de la apelada, quedando claramente establecido que Luna ostenta todos los derechos para exigir el cumplimiento del instrumento conforme a la Ley de Transacciones Comerciales, *supra.*

Establecido lo anterior, nos resta examinar si lo resuelto en el caso *Banco Santander de Puerto Rico v. Ana L. Toledo Dávila*, civil núm. K CD2009-0268, constituye cosa juzgada. Ello exige analizar no solo el resultado del pleito previo, sino la naturaleza y alcance de las controversias que fueron efectivamente adjudicadas mediante sentencia final.

La doctrina de cosa juzgada tiene como propósito conferir finalidad a los litigios y garantizar estabilidad en las relaciones jurídicas al impedir la relitigación de controversias ya adjudicadas. *Presidential v. Transcaribe*, supra, págs. 273-274; *Parrilla v. Rodríguez, supra,* pág. 268. Sin embargo, su aplicación requiere que concurra la más perfecta identidad entre las cosas, las causas, las personas y la calidad en que estas litigaron en ambos pleitos. El Art. 1204 del Código Civil de 1930*, supra.* Esta exigencia responde al carácter restrictivo de la doctrina, la cual no puede extenderse a

supuestos en los que no se haya producido una adjudicación definitiva sobre la misma controversia sustantiva.

Del examen del expediente surge que el pleito anterior instado por el acreedor original tuvo por objeto el cobro de la deuda evidenciada por el pagaré hipotecario y la ejecución de la garantía real correspondiente. En aquel procedimiento, el TPI emitió una *Sentencia Parcial* mediante la cual declaró Ha Lugar el cobro de dinero, pero No Ha Lugar la ejecución de hipoteca en ese momento procesal. Dicha determinación, sin embargo, no constituyó una adjudicación final sobre la inexistencia del derecho hipotecario ni sobre la imposibilidad futura de ejecutar la garantía, sino que respondió a las circunstancias probatorias y procesales existentes al momento de dictarse.

Posteriormente se celebró una vista evidenciaria relacionada con la titularidad del crédito para efectos de la disposición de fondos consignados, ocasión en la cual el TPI concluyó que el entonces compareciente no logró establecer su condición de tenedor del pagaré. Esta determinación tampoco adjudicó de forma definitiva la validez del instrumento ni extinguió el crédito, sino que se limitó a resolver un incidente específico sobre la legitimación de una parte en ese contexto particular.

En consecuencia, no se configura la identidad de partes ni de causa requerida para aplicar la doctrina de cosa juzgada. La apelada en el presente pleito no fue parte en el litigio anterior ni se ha demostrado que comparezca como causahabiente directo en la misma calidad jurídica que el demandante de entonces. Asimismo, el presente caso versa sobre un nuevo reclamo de ejecución hipotecaria promovido por un tenedor posterior, sustentado en incumplimientos subsiguientes y en la negociación ulterior del instrumento. Pretender que la determinación anterior produzca un efecto absoluto sobre cualquier reclamación futura relacionada con

el mismo pagaré equivaldría a inmovilizar las relaciones crediticias y desconocer que los instrumentos negociables están diseñados para circular y responder a la realidad cambiante del comercio.

Del mismo modo, tampoco procede la aplicación de la modalidad de impedimento colateral por sentencia, ya que esta figura impide la relitigación de hechos esenciales que hayan sido efectivamente litigados y adjudicados mediante sentencia final. *A & P Gen. Contractors v. Asoc. Caná,* supra, pág. 762. Del tracto procesal del pleito anterior no surge que se haya adjudicado de manera final y concluyente la inexistencia del derecho de un tenedor posterior a exigir el cumplimiento del pagaré o a ejecutar la hipoteca que lo garantiza. Las determinaciones emitidas se circunscribieron a la legitimación de las partes comparecientes en aquel procedimiento y a la procedencia de remedios en ese contexto específico.

Así, al no concurrir los elementos indispensables de identidad ni existir una adjudicación previa sobre la controversia sustantiva planteada en el presente caso, la doctrina de cosa juzgada e impedimento colateral por sentencia no constituye un impedimento para la acción instada por la apelada. Dicho lo anterior, Luna se encuentra legitimada para exigir el cumplimiento del pagaré hipotecario, ostentando la condición de tenedora de buena fe protegida por la presunción legal que establece la Ley de Transacciones Comerciales, *supra,* y nada del pleito anterior impide que se dilucide la presente controversia. Así pues, el primer señalamiento de error no se cometió.

Ahora bien, en cuanto al segundo señalamiento de error, la apelante alega que Luna únicamente tenía un crédito personal previo a la descarga de la apelante en el procedimiento de quiebras, y que, al no radicar "proof-of-claim", habría renunciado a cualquier reclamo. Esta posición carece de fundamento jurídico y fáctico.

Como resolvimos previamente, Luna es tenedora de buena fe del pagaré hipotecario, instrumento negociable debidamente endosado, con derecho a exigir su cumplimiento conforme a la Ley de Transacciones Comerciales, *supra*. La condición de tenedora de buena fe no se limita a la vertiente *in personam* de la obligación, sino que comprende también los derechos derivados de la garantía real constituida mediante la hipoteca que asegura el instrumento. Así, aun cuando la apelante hubiese obtenido descarga de su obligación personal en el procedimiento de quiebras, ello no afecta la vertiente *in rem* de la obligación garantizada, que es independiente y autónoma, y que puede ser ejercida por el tenedor de buena fe para proteger sus intereses sobre la propiedad hipotecada.

La Sec. 2-305(a)(1) de la Ley de Transacciones Comerciales, 19 LPRA sec. 605, reconoce como defensa la liberación del deudor en un proceso de insolvencia únicamente en lo que respecta a la acción personal contra el deudor; no se extiende a la acción real sobre la propiedad que sirve de garantía. En consecuencia, la descarga de la deuda personal no constituye renuncia ni limita el derecho de Luna a ejecutar la hipoteca que garantiza el instrumento.

Asimismo, la alegación de que Luna habría renunciado a su reclamo al no radicar "proof-of-claim" carece de relevancia en el contexto presente. El derecho hipotecario *in rem* se ejerce sobre la propiedad gravada y se transmite automáticamente con el instrumento al tenedor de buena fe, independientemente de si el crédito personal fue objeto de reclamo en la quiebra. Por lo tanto, la renuncia al crédito personal no afecta el derecho de Luna a instar la ejecución de la hipoteca ni implica la pérdida de legitimación para presentar la Demanda.

En consecuencia, el TPI actuó correctamente al rechazar la desestimación solicitada por la apelante, reconociendo que Luna posee todos los derechos derivados del instrumento hipotecario y de

la hipoteca que lo garantiza. La argumentación de la apelante, basada en la descarga de la deuda personal y en la ausencia de "proof-of-claim", no puede prevalecer frente a la protección legal conferida al tenedor de buena fe de un instrumento negociable con garantía hipotecaria. Por consiguiente, el segundo señalamiento de error carece de mérito, y procede confirmar la legitimación de Luna para exigir el cumplimiento del pagaré hipotecario y ejecutar la hipoteca sobre la propiedad gravada, conforme al derecho aplicable y a la naturaleza de la obligación garantizada.

Por último, en su tercer señalamiento de error, la señora Toledo sostuvo que el TPI erró al no permitir el retracto del crédito litigioso. Esta pretensión carece de fundamento legal y fáctico.

El Art. 1425 del Código Civil de 1930, *supra*, establece que la cesión de un crédito litigioso confiere al deudor el derecho a extinguirlo mediante el reembolso al cesionario del precio pagado, las costas ocasionadas y los intereses generados desde el pago. Sin embargo, tal derecho se ejercita dentro de un plazo limitado y en relación con créditos litigiosos conforme a la definición de la ley civil.

No obstante, la jurisprudencia del Tribunal Supremo ha dejado claramente establecido que las disposiciones del Código Civil relativas al retracto de crédito litigioso no aplican a los instrumentos negociables. En *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, nuestro más alto foro concluyó que la Ley de Transacciones Comerciales, *supra,* en armonía con la Ley del Registro de la Propiedad, *supra,* desplaza las reglas civiles sobre crédito litigioso cuando se trata de la cesión o transmisión de pagarés hipotecarios. Esto se debe a que un pagaré hipotecario constituye un instrumento negociable protegido por la Ley de Transacciones Comerciales, *supra,* y su transmisión se regula conforme a esa normativa, no al Código Civil.

El Tribunal Supremo ha explicado expresamente que el Art. 1417a del Código Civil de 1930, *supra,* dispone que el retracto de

crédito litigioso "no es aplicable a la cesión de un instrumento negociable, traspasado de buena fe y por valor recibido, antes de su vencimiento" *DLJ Mortgage v. SLG Santiago-Ortiz,* supra, pág. 967. Asimismo, el Art. 1427 del Código Civil de 1930, *supra,* remite al régimen de la Ley Hipotecaria cuando la cesión involucra un bien inmueble, reafirmando que los derechos reales sobre la garantía hipotecaria se transfieren junto con el instrumento. Íd., pág. 961.

En el caso de autos, Luna adquirió el pagaré hipotecario de buena fe, cumpliendo con todos los requisitos de la Ley de Transacciones Comerciales, *supra* y no existe evidencia de adquisición indebida, fraude o cualquier acto que pudiera dar lugar a la aplicación del retracto. Por tanto, cualquier intento de la apelante de invocar la figura del crédito litigioso resulta inaplicable y carente de efecto. En consecuencia, la figura del retracto del crédito litigioso no procede y el TPI actuó correctamente al mantener la validez del crédito y la facultad de Luna para continuar con la ejecución hipotecaria correspondiente. De este modo, el tercer señalamiento de error no se cometió.

En atención a lo antes discutido, ninguno de los tres señalamientos de error de la apelante tiene fundamento. Luna se encuentra legitimada para exigir el cumplimiento del pagaré hipotecario, ostentando la condición de tenedora de buena fe protegida por la Ley de Transacciones Comerciales, *supra.* La doctrina de cosa juzgada e impedimento colateral no opera frente a su derecho, la ejecución hipotecaria procede independientemente de la descarga personal en quiebra de la apelante, y la figura del retracto de crédito litigioso es inaplicable a la cesión del pagaré hipotecario. Por consiguiente, el TPI actuó correctamente al mantener la demanda y permitir la continuación de la acción, garantizando el respeto a los derechos de propiedad de Luna y la aplicación de la normativa mercantil vigente.

IV.

Por los fundamentos antes expuestos, ***confirmamos*** el dictamen apelado.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones